Attorney General of the United States and his official capacity et al. appellant, Mr. Rubini for the appellants and Mr. Wolfsey for the appellees. Mr. Rubini, good morning. Good morning. May it please the Court. With the Court's permission, I'd like to reserve three minutes for a vote. Your Honors, the District Court in this case, exercising jurisdiction, Congress explicitly took away from it, issued a sweeping nationwide injunction requiring asylum officers going forward in perpetuity to apply its erroneous interpretations of asylum law in tens of thousands of cases a year. Since the Court issued its decision, no court has agreed with it, two Circuit Courts of Appeals have expressly disagreed with it, and for those reasons, the Court lacks jurisdiction, or as I will explain, the Court lacks jurisdiction. We lack jurisdiction because other courts disagree with the District Court? No, Your Honor. Pardon my imprecision. Let me start with jurisdiction and we'll get right to that. As we lay out in our brief, we think the District Court lacks jurisdiction for a very simple reason. Nothing in the statute that provides for judicial review, that's section 1252E3, provides for judicial review of substantive asylum law determinations made under the authority of a different statutory provision. Let's just get right to the core of this. Let's assume you're right about this, okay? 1252C3, section 1252C3, gives us jurisdiction, gives the District Court jurisdiction to review written policy directives or guidelines that implement 1225B. And the guidance that the District Court was reviewing here, set aside AB for a second, just let's focus on the guidance. The guidance that the District Court reviewed is entitled, it's entitled Policy Memorandum, and it expressly invokes 1225, and says that it shall be used to be guide determinations in credible fear determinations. So why doesn't that fall right under E3? So two answers to that. First, you should look at the title of the guidance. No, no, no. The title? Yeah, the title of the guidance you're referring to is a policy memorandum issued by USCIS which says, guidance for processing reasonable fear, credible fear, asylum, and refugee claims in accordance with matter of AB. Wait, wait, the statute says written policy directive. You're asking me about the specific guidance, the USCIS guidance at issue in this case. But it says guideline. Is that different from a guidance? So that's the answer to my second question. First my point, or my second answer to your question. My first point was, this is not a document that specifically refers to credible fear or expedited removal. It applies a general asylum standard. No, it specifically cites 22, it specifically cites 1225. Right. So let's get to the answer to the second, my second answer to your question. So the statute itself refers specifically to authority of the Attorney General to implement this section. What is this section? This section is A, USC 1225, B, 1. So I think you have to understand written policy guideline, written policy directive, written procedure in reference to what 1225, B, 1 gives the Attorney General the authority to do. At least in five different locations in that statute, Congress instructs the Attorney General to take certain actions, all of which are process-based actions. How to process credible fear claims. How to process individuals at the border facing inspection, seeking admission to the country. In particular, for example, the Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge. They're instructed to set up a system of judicial review before an immigration judge. That's 1225, B, 1, B, 3, 3. Or the Attorney General is instructed to provide information concerning asylum interviews. So again, an instruction to the Attorney General to take an action that is a process-based action implementing the procedures laid out in 1225, B, 1. I hear everything you're saying, but I still don't understand how that neutralizes the district court's authority to review a written policy directive or guideline that implements 1225, B, which is what this is. So if you look at the statute, again, you're assuming that. But I didn't hear anything you just said there. I think your question assumes both that it's a reviewable guideline and that it implements the authority of section 1225, B, 1. But the only thing you said about it not being a guideline is that the statute says guideline and this says guidance. No. What I actually said, Your Honor, separate from that, is that the statute refers to under the authority of this subsection, again, 1225, B, 1.  is. Are you saying the guidance doesn't implement anything? It doesn't implement anything under the authority of that section. It does implement AB, which itself implements a different statutory provision. So if you work back from what the guidance does, the guidance implements the Attorney General's decision. It doesn't add anything new to that decision. It just says, here's this decision, here's how you need to implement it, it extensively quotes that decision, and just FYI, going forward, matter of AB is binding law, as any other board or Attorney General decision is. What does matter of AB do? So I think you have to look at what matter of AB does in order to understand what the guidance does. Matter of AB implements section 1158. So the entirety of plaintiff's theory and what the district court did turns on the fact that the statute refers to the significant possibility standard. That's what defines what a credible fear of persecution is. Incorporates by reference section 1158. And so it says, and I'm paraphrasing, in order to show a significant possibility of asylum under section 1158. That's what the test is. Can you show a significant possibility that you could ultimately satisfy the section 1158 standard? That's what matter of AB is implementing. Section 1158. That's what the guidance is implementing, including its choice of law provision, how to apply section 1158. Nothing in the guidance or matter of AB says anything about the procedures that one uses to go about determining whether someone has a significant possibility of demonstrating persecution. But the huge footnote specifically says that this applies to 1225B proceeding. Well, it doesn't quite say that. And I think the footnote says, does the sense, so two answers to that. It says, let's look at it. It says, here's the footnote. Accordingly, few such claims would satisfy the legal standards to determine whether the footnote exists. That's what it says. Right. And so take away that footnote. As if the footnote didn't exist. The footnote's there. Right. But let's assume, this is not just considering the statute for this case. I think even plaintiffs and district court know that because they have a backup argument that it doesn't matter if the footnote exists. Because matter of AB implements a substantive asylum standard that then gets applied in credible fear proceedings, it's therefore implementing those proceedings with or without this footnote. So the footnote's a distraction. The footnote doesn't matter. All the footnote does is say, hey, asylum officers, I've just issued a precedent decision. You like everybody else has to follow it. That's all that footnote does. If you take away the footnote, plaintiffs would still be here arguing. I don't think we want to say, do you really think we'd want to say in an opinion written by the Attorney General of the United States that his footnote is just irrelevant? We wouldn't say that. I'd leave it to you how you wish to refer to the footnote. All I'm saying is the footnote is not outcome determinative here. They'd be here in this case with or without the footnote. All the footnote does from our perspective is remind line officers they have to follow the binding precedents of the Attorney General. I think there's another sort of problem with what the district court did here. And this sort of is relevant to the jurisdictional argument. So let's assume that the court was right. It could review some aspect of a substantive asylum law, which for the reasons we've just explained, it cannot. So the court just drove right through three other statutory provisions that do not allow it to implement any sort of nationwide prospective injunction like it did here. To essentially tell the Attorney General or USCIS going forward, this is how you are going to construe section 1225B1, and this is how you're going to construe section 1150A. I think the district court in plaintiff's give short shrift to these provisions, but we cite them in our brief. 1252E1 essentially says, literally, no court shall have jurisdiction to enter declaratory injunctive or other equitable relief unless specifically authorized by another subsection. There is no other subsection that authorizes that. 1252E3 authorizes a determination. And as we lay out in our brief, we think that's more akin to sort of set aside relief for these plaintiffs. Nothing in the statute authorizes a prospective injunction that essentially constitutionalizes in a sense, because there's no way to get around it now, unless Congress steps in to rewrite this injunction as to what asylum law is. That's completely backwards. The Attorney General, through case-by-case adjudication based on the facts before the trial, or USC has asylum officers in credible fear proceedings, makes those determinations, and the district court here has just essentially neutralized that entire process. The second statute I would point to is 1252F, which again, says no nationwide injunctions, period. Other than as applied to individual aliens. Again, the district court didn't really address that. And third, this is sort of another clue as to what Congress really meant here. We have a statute 8 USC 1252A2A3, which doesn't, unlike the other provisions in that statute, have a carve-out for section 1252E review. And it says no review of determinations under section 1225B1B. That's the credible fear determinations. All that together, at the very least, shows the district court had no authority to issue an injunction, but moreover, had no authority to essentially rewrite asylum law. I want to ask you a couple of questions about the merits, but for purposes of all of my questions, there's not that many, don't worry, there's just a couple, I want you to make three assumptions. Number one, that I think the district court had jurisdiction to review the guidance. Number two, that unlike the district court, I don't see any statutory violations in the guidance. This is just an assumption, okay? And number three, that I agree with you about the point you just made about injunctions. So my questions have to do with the APA aspects of the guidance, arbitrary and capricious. So let's start with the choice of law, the circuit, that the guidance says you use the circuit court where the credible fear meeting occurs. I didn't see anything in the guidance that acknowledged that that was a change in the law. Did you? Is there anything in there? So I think as we articulated, this is the first time there is such a specific choice of law policy that USAS has issued, so they wouldn't have to acknowledge or identify a change. Do you disagree that up until this, officers were using the circuit, the most favorable circuit? There is a lesson plan that's in the record, page appendix 379, that allowed, instructed asylum officers to do that unless there was a more specific alternative policy. This is that specific. Okay, so your argument then about this turns on the fact that there was no need to acknowledge that because there was no previous formal guidance, right? That's the first part of the argument. Do you have a case that supports that, that an agency can, is allowed to change informal policy without acknowledging it? Yes, actually. We'd refer you to National Environmental. That's a 2018 case from the circuit we cite in our briefing that also relies on Fox Television. And all the agency needs to do in a choice of law situation like that is, the statute doesn't prevent it. Fox Television says they have to acknowledge the change. It says, and the way they can acknowledge it, Fox Television says, is by making the change. They've acknowledged that there was a policy, they've changed it. But where do they do that in the guidance? The guidance specifically points out that there is a problem, the venue uncertainty problem, that they don't know where these people will be if they go through proceedings or if they'll be in proceedings at all. And that is enough under Fox Television and the case, the National Environmental case, to identify the problem. I think also, as you yourself identified in the Grant Medical case, Judge Tindall's website, the Grant Medical case from 2017, the different law in a different circuit, quote, provides perfectly adequate reason to make such a change. And they identified the problem, they came up with a very reasonable way to deal with the solution. Plaintiffs, the plaintiff's solution, the district court's... Well, suppose, let me just ask you a hypothetical. Suppose a person has their credible fear hearing, say, in Texas, and the Fifth Circuit law is very unfavorable and that person is excluded. But assume further that had the person, had the officer found a credible fear, would have had his hearing, say, in New York in the Second Circuit, where the law is better. So by picking the local circuit, the risk is that the agency is excluding people who might in the end actually qualify for asylum. And true, you say, yes, this is easier to administer, but I didn't see any indication in the guidance that the agency had balanced that issue, namely the ease of administration, against the potential impact on the other purposes of the statute, namely to ensure asylum for qualified people. Your question, Your Honor, assumes that the significant possibility standard has words that are not in the text. Significant possibility of demonstrating asylum under the law most favorable to the alien. That's nowhere in the statute. No, no, no. I told you when I started this that you ought to assume that I don't see any statutory violation here. Fair enough. But then my second response to that is that cuts both ways. So there's two things. First, we have a Fifth Circuit decision in your very hypothetical we've brought to the Court's attention that goes 100% the other way from the district court. And USCIS officers are apparently supposed to apply Ninth Circuit law or Seventh Circuit law or Fourth Circuit law, any law but the law binding in that circuit. And they made the perfectly sensible decision to say, no, we're not going to do that. And for a second reason, because we don't know if they're going to end up in the Second Circuit. We don't know where they're going to end up at all because you don't know if they're going to actually get a positive credible fear. And so there's both horizontal and vertical venue uncertainty. Plaintiffs only want to focus on the people that could have passed the test and therefore could have been in a more favorable jurisdiction, but many of these people will never pass the test. So there's no reason why the law where they are situated shouldn't apply to them. I see my time is running out. I want to ask you about another aspect of it, about condone or the issue about condone or complete helplessness. Okay, so again, I don't assume I don't see any statutory problem here. Okay, no statutory problem. You say that condone or helplessness is just another way of describing unwilling and unable, right? That these are just interchangeable terms and that there's really been no change. Do I understand your position correctly? That that is part of our position, yes. Yeah, okay. But first of all, I mean, the words are totally different. Condone is completely different from a country might well be unwilling or unable yet not condone something, but more important, both AB and the guidance say, and here I'm quoting that the applicant must show that the harm or suffering was inflicted by persons or organizations that his or her own government was unwilling to control, such that the government either condone the behavior or demonstrate a complete helplessness. So it's defining unwilling and unable as condone. So it looks like a complete change in the law to me. A couple of responses to that, if I may. First, looking just at AB before the guidance, the attorney general used six different formulations of that standard. But the sentence I just read is in the guidance and in AB, right? Correct, but those aren't the only articulations of the standard, either in AB or the guidance. You're reading one sentence that plaintiffs take to mean a radical redefinition of the standard. So if we were to, would you be comfortable with an opinion that said this condone and helplessness language is not a critical part of the opinion and it's still the old unwilling and unable standard? Our view, and this is one of the Fifth Circuit has echoed since the decision, is that condone or complete helplessness is one way to articulate and redefine the unwilling and unable standard. I may or may not agree with the Fifth Circuit, but it would help me if you would explain to me. So your answer to my citing this question, which seems like it's defining unwilling and unable as condone, it says such that, is that that's just an isolated sentence that isn't binding on anybody, right? That it's not a new statement of the law. Is that true? Let me put it this way. We would be perfectly content, in fact, we advocated this position in district court and we're asking for it here, for a holding saying the two standards are interchangeable, that they reach the same result, they articulate the same thing, unable and willing, completely helplessness or condone, all do the same thing. Show whether a country has lost sufficient control of its law enforcement abilities that you can arguably say that it's the state condoning or unwilling or unable to protect the individual from the private violence. The two ways of reaching the same result, the Fifth Circuit has said that, the Seventh Circuit has said that, the Sixth Circuit has said that, the Eighth Circuit has said that, and that, the fact that there are four circuits that have said that and none that have gone the other way, is under this court's precedence evidence that there is at least ambiguity that the Attorney General gets to construe. But our point is that he hasn't actually changed anything. So you have four circuit courts citing against the district court here, at the very least, the Attorney General should be given the deference, he should be accorded for reaching that same conclusion. I just have two more quick questions about the merits and I'll just ask you, could you address the social group issue? What is the government's view about what the social group rule now is? I think there's two possible social group issues, could you clarify which one you want me to address? I mean, our position really at the threshold is simply that what the Attorney General did in matter of AB is remind immigration judges and line officers that there is a standard, the standard laid out in MEVG, that they have to follow in every case, regardless if it is a private violence case, a domestic violence case, a gang violence case, or any other kind of private violence case. The same standards apply, immutability, particularity, and social distinction. So that's the general rule, if there is one at all, that the Attorney General reminded. He didn't create a new rule, he just reminded line officers to follow the old rule. And reversing ARCG, which skipped all those critical steps by assuming its conclusion, that was the new rule that plaintiffs would, they say they're not challenging the overturning of ARCG, but what they really want is a rule that says if you articulate a claim of domestic violence, premised on, categorically, domestic violence or gang violence, you've articulated a particular sort of view. Well, sir, let's, let's, that's, I'm glad you brought that up, but, so, so the facts in AB was Guatemalan women unable to leave their relationships, right? That was, was that, was that the standard? That was the gist of it. Yeah, right. So, I'm curious to know how immigration officers are to treat, so a woman shows up and makes this claim. Would the immigration officer know from that statement that she's expressed, that she's met the standard for, to get into the system here, that she's expressed a well-founded fear? If all she says, and the officer also has an obligation to elicit testimony, but if all she says is, I'm in a relationship in Honduras and I'm unable to leave it, no, that would not, under matter of AB, satisfy the testimony. But how would you know that without knowing why she's unable to leave it? Well, that's, I mean, it seems to me like you're right if she's unable to leave it because she fears retaliation by her husband. Then I get your point, it's circular, right? But suppose she's unable to leave it because, say, for example, she comes from a country where there's no divorce or where divorced women face stigma and, and other problems in society. Suppose that's why she can't leave it, leave the relationship. So that fits perfectly, Your Honor, within the framework that AB reaffirmed, again, reaffirmed not created from whole cloth, that you have to ask the questions, you have to check the evidentiary boxes. The group you just described, it's not categorically barred. If there's evidence that society views it as socially distinct, so others view it that way as a distinct group separate from just women in a relationship or men in a relationship and whether it's particular. So it doesn't define literally everyone in the society or some broad amorphous group.  So that's, that's helpful because what you're saying to me is that Guatemalan women, if all we know is that Guatemalan women unable to leave their relationships, the officer needs to know more. That's maybe okay, but maybe not okay. We just don't know. Right? Well, that's what the problem with viewing this case in the vacuum is. This is why these cases are done case by case. Well, that's why I asked you a hypothetical, so we would get out of the vacuum. Fair enough, Your Honor. Okay. That's because it's, these briefs are, this is, this stuff's hard to understand if you don't think about a specific case. Right? I mean, it's really, which is why we have the petition for review process that does this case by case. Another problem with what the district court did here. Your Honor, I, I'm happy to answer questions as long as you'd like me to. Yeah, but I actually have, I just actually have one more after this, but, and then I have some. Yeah. So what about, what about, okay, okay. I found, let me ask you about another case. Okay. There's a case, I can't remember which circuit it's from, maybe the Seventh Circuit. Women who are members of tribes in Togo that practice female genital mutilation. How would that be treated under the guidance? So again, you've, I don't know if you asked me to assume that there's going to be further questioning by an asylum officer or by an immigration judge. No, no, just, you can answer it any way you want. So the woman comes up and she says, I am a member of a tribe in Togo that practices female genital mutilation. That's what she says. Now what happens next? And she says, I have a well-founded fear of persecution. That's what she says to the officer. What does that mean? I don't want to quibble with your characterization. So now he takes out the guidance in AB, what, what does that officer do? So there wouldn't be a well-founded fear of persecution yet. That's a standard. Why? So that's not, no, you're just, that's not the standard that's applied just yet. We first need to articulate whether there's a particular social group at all. And I understand that to be your question for the purpose of the guidance. Well, your point's well taken. So the individual, the individual officer or the reviewing immigration judge in credible fear or in normal removal proceedings, the immigration judge, the board and so forth would review the record. In this case, the credible, the asylum officer would elicit further testimony because that's not, again, none of these groups are categorically barred. That's again, crystal clear in AB, in prior cases, in prior board decisions and in the guidance. But there are questions you have to ask. Okay. Let me ask you about this group you just articulated, this clan or tribe of individuals who practice this female genital mutilation. Well, on its face to me, at least, it sounds like that's a socially distinct group because it's based on a tribe or clan, which has been recognized as socially distinct in some circumstances. And it's particular, describes a small, narrow subset of individuals in that society who are both in that group and have, have had female genital mutilation forced upon them. But you would ask the questions again. Is it immutable? Yes. That, that, that satisfies the immutability standard, I don't think we're talking about that. Is it particular? Is it socially distinct? You satisfy those boxes, you move on to the next step, which is, well, is the persecution on account of? So is there the nexus? And then finally, is the government unwilling or unable to stop it? And so that group could be, just like any of the other groups that we're hypothesizing here, could be, so long as it's not circularly defined. So the answer to your question is, that group could be a cognizable social group. You just, again, under AB, under MEVG, have to go through the steps. And all that Matter of AB did, and all that the guidance does in repeating what Matter of AB did, the USIS guidance, is remind asylum officers of the very simple point. You have to go through the steps. That's the rule. That's the only general rule that AB articulates. I just, one more, then, and Judge Griffith, go ahead, but, so, all right, so I'm thinking about your answer to that question. Then the guidance has this bolded statement, which says that, in general, membership in a social group defined by the member's vulnerability to domestic or gang violence will not establish the basis for credible fear. So in the hypothetical we were just talking about, the woman from a tribe that practices female genital mutilation has articulated a group that's defined by the member's vulnerability. So it sounds like under this bolded sentence, no matter what she says, she would be excluded. Is that true? No, I don't think that's right. Or should I read the word, membership in a social group defined exclusively by the vulnerability? Maybe the word exclusively needs to be used. I think the operative language in both AB and the guidance is defined, yes, independent of, not exclusively, that's what AB, that's what MBVG, the case that AB is repeating and reminding officers to follow, says, the harm must be, exists, or the group must exist independent of the harm. This guidance, the bolded language and the guidance you referenced, again, in general, prefaces that entire set of bolded language, so there's just no general bar, there's no general bar that these groups will ever qualify. Again, you check the boxes, you show particularity, you show social distinction, and you don't define the group, you have to define the group independently of the harm you get through. So the suggestion that there is now a categorical per se bar on these sorts of claims is incorrect and I point out, again, the cases that have addressed this in the proper fora in the courts of appeals since the district court's decision, particularly I'm referring to Gonzalez-Veloz in the 5th Circuit and Amos Goua-Preciado in the 11th Circuit, which we gave to the court in 28 tailors, also say there is no general rule, just follow the steps, and that's the general rule. Follow the steps, you can make your claim. Did you have one question? I think I just have one question. Can I go back to the unwilling, unable, and then condone, and completely helpless? So you're right, and Judge Tatel's right, it's more helpful to all of us to think of concrete examples. So let me give you an example. If you have a woman from Guatemala who claims that she's the victim of domestic abuse and it turns out that she has gone to the authorities and gotten a restraining order, but the restraining order was of no effect, just burst right through the restraining order. What happens under unwilling and unable? If the standard is just, the only language we're using is unwilling and unable, what happens to that claim? Well, assuming, because the question assumes this is a particular social group that's cognizable and isn't circularly defined and so forth, it's just an unable and unwilling. So that's similar to the facts of the matter of AB in part, they had a restraining order there, there was no suggestion the police weren't doing anything, and the Attorney General there said- No, that's not my hypothetical. It's not that police aren't doing anything, there's a restraining order that didn't work. She'd gone, the woman goes to the government, tries to get help, and help doesn't, you know, help isn't successful. I'd have to fight the hypothetical a bit in that I would need to know more. Just like an asylum officer would ask a number of follow-up questions, well, tell me more about how many times did you go to the police, or did the police say anything to you that suggested they didn't care? What I'm getting at is she's not completely helpless there. She's gotten some help, but the help hasn't been enough. It seems to me that you have different, I'm pressing at the idea that, no, you actually have a different regime under unwilling and able as opposed to condone and completely helpless. Well, no, I don't think so. And here's why, two answers to that. First, so, unable or unwilling, and condone sort of gets you to the same place here, which is we're just not going to lift a finger or do anything about it. Right. Yes, you got your order, but good luck with that. The hypothetical I'm giving you is something was tried, wasn't enough. It's not that the government turned a blind eye to it, the government tried to help, but it wasn't enough. I mean, again, condone and helpless is also disjunctive, just like unable and unwilling. So condone, unable and willing. I'm focusing on completely helpless. She's not completely helpless. She got some help, but it wasn't enough. But I think, you know- It seems to me, under the guidance, that that may not be successful, whereas under unwilling and unable, that might have been a successful argument. I think the guidance does articulate that this would not be categorically barred. It would be a difficult showing to make. So with that evidence and that evidence alone, it would be a difficult showing to make, but it's not barred. Whereas under unwilling and unable, it- I think it would also be difficult to make under unwilling and unable, because again, in both circumstances, condone or unwilling, unable, you have someone who has a restraining order and the government's not doing anything about the restraining order. In your hypothetical, I think you get to the same place. Yeah, that's not my hypothetical. If the government is trying to do something about it, they're not successful. If the government is trying to do something- Yeah, yeah. Maybe I've misunderstood your hypothetical. If the government is trying to do something, I think it would be more difficult to make this showing under either standard. If the government is actually doing something, and again, that's in part the scenario in AB, there was a restraining order. The police did take some action. If it's not a perfect solution, they fail at their job, that's not a basis for asylum in most cases. And that's the same as the guidance. Thank you. One very last question, a question about remedy. Again, suppose I assume I don't see any statutory violations here at all, but also assume that I think, and these are both assumptions, they're hypotheticals, that I think that maybe some aspects of this might be arbitrary and capricious in the way we review APA cases. Do you see anything in the statute that would preclude a court from granting your standard APA remedy here, namely vacature of a portion of the guidance that's arbitrary and capricious? No injunction, just standard vacature of an arbitrary and capricious portion of the guidance. And I want to be clear, we're talking about the USAS guidance document, not the Attorney General's decision.  Just the guidance document. I'm not talking about the APA, no. So I think two answers to that. First, the only word in the statute, it's admittedly narrow and limited on, is determination. The court makes a final quote, determination, that this is or is not unlawful. We think that is more akin to a sort of declaration. You cannot use that determination going forward, but go back, do your homework, check the boxes, and you can do it if you do it the right way the next time. That's what we think the court can do. The words set aside don't appear in the statute, they appear in the APA. We think the remedy under 1252.3 is a unique, limited sort of remedy, so it doesn't necessarily entertain an APA remedy. It doesn't have that set aside language in there, and it doesn't have the Hobbs Act sort of remedy, enjoin application of. So it's just determination, a declaration that you can't do this going forward. But you're free to change the policy if you'd like, if you follow the correct steps, which is not what the district court did here. That's helpful. Thank you. Mr. Wapsie. Thank you, Your Honor. May it please the court, Cody Wapsie, ACLU, for the plaintiffs. Your Honors, the policies challenged in this case individually and collectively ratchet up the credible fear standard that we've been discussing. And Congress set that standard purposefully low, and did so to ensure the genuine, vulnerable asylum seekers, like the plaintiffs in this case, would not be summarily removed from the United States. I think the district court correctly enjoined those policies, applying ordinary statutory construction and administrative law principles. You're going to address the jurisdiction? Absolutely, I'm happy to, Your Honor. So our claims fall squarely within the plain text of subsection 1252.3. We brought them within 60 days in the District of Columbia, and each of them challenge expedited removal policies, procedures, guidelines, et cetera. The government's position, as I understand it, is that none of this implements expedited removal because only procedures are to be found in the expedited removal statute. But that's just simply not true. The credible fear standard is part of 1225B, and it is, I mean, we can quibble about the words procedural or substantive, but it is an expedited removal standard, and what these policies are doing are giving effect to that standard and telling adjudicators, here's how you should carry out the credible fear standard with regard to these various questions. And so picking up on – But you agree there's no jurisdiction to review individual determinations, right? You can't just come to court to say I'm dissatisfied with the results of the expedited removal procedure, right? Within the E3 framework, that's right, Your Honor. We are not – So what's different about this? I mean, that's part of what you're seeking here, right? You're seeking a change in individual determinations? Your Honor, we're not challenging the outcomes of the determinations of these individuals' cases. We're not saying look at the facts of this particular credible fear interview and it should have come out. You're saying look at the law that was applied here. Exactly, Your Honor. And that's exactly what subsection E3 directs itself to. It says you need to look at the written policies, procedures, guidelines, et cetera. Obviously, we do have individual plaintiffs in this case and they do have facts. And this court in AILA said those are people who can have standing to bring this kind of challenge. But we're not challenging the determination as such in this case. And so I don't think that there's any problem with regard to individual determinations. So getting back to the government's argument of this sort of process-based argument, I just think that's entirely a textual. And one way you can tell it is, is that E3 lists out a number of different types of writings. And one of those is expedited removal procedures. But it also includes policy guidelines, et cetera, et cetera. Now, the government said something new at argument today, which is that guidance and guidelines, mean different things. I'd submit that's both waived and also a distinction without a difference. As Judge Tatel pointed out, the guidance document in this case very specifically refers in its title that it is guidance about credible fear. It invokes the credible fear statute. And it's really shot through with discussion of credible fear, including some policies that apply really only in credible fear is relevant here. The government's other jurisdictional argument is that whatever E3 ordinarily provides review over, credible fear policies are categorically barred from review. And that's based on 1252A2A3. And I just point out, that's a really striking position for the government to be taking. On their jurisdictional view, they could pass or enact a regulation that says, no more credible fear policies, period. They could enact a policy that says, instead of significant possibility of harm, excuse me, of eligibility for asylum, now it's going to be beyond a reasonable doubt eligibility for asylum. And that there would be no review in E3 of that. That can't be right and isn't right. And that's because A2A3 is about individual determinations. It's the application of expedited removal to individual cases. And we know that in part by comparing it to the next Romanet subsection 4, which is specifically about policies and procedures, which is what this case is about, and does include a carve out for review under subsection E. I think that's enough to respond to the A2A3 point. I do just want to put a marker down. We also think the government's reading in general of A2A3 is wrong and has to be wrong because it wipes out the individual habeas review under E2. But the court doesn't need to address what A2A3 means beyond that it doesn't apply here. In terms of remedies... Wait, before you get to remedy, can you talk about some of the elements of this that you object to? And again, can we do it in the context of an actual case? Let's take the facts of AB. Okay. Married women in Guatemala unable to leave their relationships. Okay. So would you have any objection to that if what that meant was that the immigration officer has to be sure that the... Just fear of retaliation by the husband, but that it's something broader than that. That the group is broader. Maybe it's identified by the fact that women in this country, as I said to government counsel, can't get divorced or that there's a stigma for divorce. There's something broader than just... You don't have a problem with that, do you? A couple of responses, Your Honor. I think that would go a long way towards resolving the real concrete problem here, which is, as Your Honor pointed out, that there could be all sorts of reasons why a woman... Because government counsel said that's what it means. That's the way he interprets this. He agreed with me that you don't know the answer to the question about this particular woman's eligibility until you ask a few more questions. And if the questions... I don't need to repeat myself. You see my point? As I read your briefs, I thought this is what you wanted also. That this is the way you read it. That even under your view, married women in Guatemala unable to leave their relationships, if the unable to leave their relationships is, in fact, the fear of physical harm from the husband, you agree that that doesn't fit the standard because there's no broader factor of defining the, quote, social group that she's a part of, right? We don't agree with that, but for a reason I'd like to explain. Gee, I thought we were getting close. Sorry. There's basically a technical reason why that's a problem. So there is this circularity rule that starts in this case matter of CA that's cited and sort of gets repeated over and over. But this AB doesn't adopt the circularity rule, does it? It does... Has it been around for a long time? I'm sorry, it doesn't adopt it for the first time. No, Your Honour. And so the question is really, the narrow legal question is, what does that circularity rule mean? And I think you have to look at MEBG and the other cases. But... And we do not think that the group you just described, even if it's about persecution, would be technically circular within the way the agency has defined that term. But... Wait, I don't understand why. Certainly. And so that's because what the agency has said is the only groups that are circular are those that are exclusively defined by harm. And so the group you described has Guatemalan women in a relationship, so it's not exclusively defined by harm. Now, the agency might go back and say, we actually want a different circularity rule. We think that one's too narrow. They haven't done that here. They haven't given the reason, explanation. But I do think it's a... To respond to your practical question, I think there very well might be other problems with the group you described, including a failure of nexus. So if what you're saying is the group is basically, you know, women in a relationship who are going to be harmed, and you're saying they're harmed because they're going to be harmed, that's a failure of nexus. But it's not that the social group is not cognizable. That's a technical nuance, I think, of immigration law that the court doesn't need to reach, because the ultimate problem here, I think, for this policy is the factual assumption that you were pointing out, Judge Tatel, which is that there are all these various reasons that you might be unable to leave. Now, I want to point out the way... But you heard government counsel agree with me that those had to be taken into account. I heard government counsel say that. Our point is, that's not what the policy says. Oh, so what if the policy doesn't say that? Yes, Your Honor. Let's look. In fact, when you... You... You... Okay. You say... Let's... Okay. As I read your brief, you rely on two sentences in the guidance. One says that AB casts doubt on whether a group defined solely by the ability to leave a relationship can be sufficiently particular. That's not a rule. That's just a statement about what the Attorney General thinks AB stands for. Just that it casts doubt on that. That's not a rule, is it? No, Your Honor, and I wouldn't primarily rely on that. So what do you... I would rely on the statement in the guidance, and this is Appendix 357, that these inability to leave groups would generally not share a narrowing characteristic. Is that the bolded language you're talking about? I believe the bolded language is the domestic violence rule that's at App 358. So no, this is in non-bold font. See, I'm sorry to interrupt you, really, but when I looked at your brief, you cited to a portion of the guidance that had these two sentences. The one you just agreed with me was a prediction, not a statement. The other one was, where a social group is defined... Where a social group is defined solely by the ability to leave a relationship. And that doesn't seem problematical to me either, because it has the word solely. And in other words, if that is the sole reason, and the sole reason is... is potential abuse by the husband, my impression was you were okay with that. I agree that if that is the way Your Honor is reading the guidance, then that would be an ordinary application of the circularity rule. I do think that what it's talking about in context is, you know, women in Guatemala in a marriage, married women, who are unable to leave. And that is not defined solely by... Yeah, we actually don't know, right?  With just that statement... Married women in Guatemala unable to leave a relationship, as I was discussing with gubernatorial counsel. That doesn't tell us enough information, right? Because we don't know why she's unable to leave. That's exactly right, Your Honor. I would just like to make a point about how this works in practice. Yeah, please. Because as the government agrees, and this is addressed in the district court's decision below, the adjudicate, excuse me, the applicant in a credible fear interview is under no obligation to come forward with a technical social group, any kind of legal theory. They're required to come forward with facts. And so the question is, when an applicant comes to the adjudicator and says, for 20 years I was brutalized and raped by my spouse, how is the adjudicator to understand that claim? And so if all the policy is telling the adjudicator is, well, you think about a group that's entirely defined by harm and then you reject that group, then we agree there's no problem with it. But I don't think that's really a practical way to understand what this is telling adjudicators. I think it's telling them essentially to assume that that's going to be the social group, that it's going to be defined entirely by harm and then rejected on that basis. And as Your Honor pointed out, I think it's connected to the general rule about domestic violence and gang claims in that way. Although it's somewhat slippery in terms of the various ways the guidance is saying it, I think taking a step back and looking at it practically when an adjudicator gets this document, it's going to be clear to the adjudicator maybe not exactly why they're expected to deny domestic violence and gang claims, but certainly that they are expected to deny those claims. And so certainly I think you may be able to parse individual phrases in various ways, but that's how we ultimately read the guidance as a whole. I would like to touch on the remedies issues unless there's more questions. Yeah, would you just say one thing about the presumption, your argument about that these establish a presumption? What's the... Is it the bolded sentence? Yes, Your Honor. There's two parts of the guidance, I think, that this is the general rule against domestic violence and gang claims. So there's the bolded portion that's at AF 358 and then at AF 362 again the guidance comes back to this and reiterates it in slightly different terms. And so... And then obviously the statements in AB itself. In terms of remedies... Excuse me, I'm sorry. Yes, please. I forgot to ask this. So I understood your brief on the social group issue. Am I right that you're okay with AB? You just don't think the guidance accurately reflects AB, correct? We think there's actually no holding in AB on this question. Basically that what AB said was that the BIA in the previous case, ARCG, just failed to consider circularity and obviously we have no problem... And that's okay with you, right? We have no problem with saying you have to consider circularity. So your basic... That AB on this issue was fine, made sense, previous decision hadn't grappled with it, but that the guidance has turned this into something more. Is that your theory? That's exactly right. Now obviously we're not conceding to the extent AB said something differently. We have challenged AB itself. Well, but on this issue I read your brief as saying you're okay with AB. We're okay with AB insofar as the court agrees with our reading of AB. If the court says that AB... That doesn't help me. He didn't point to any language in AB that you found problematical. I agree and that's exactly why we read it the way we do. In terms of the remedies issues, if I may, the government's position... Oh, excuse me, I see I'm over time, if I may. Do you have a question? Oh, please. I'd like to hear his answer too. Yes, the government's position has been something of a moving target on the remedies. In their briefing, actually, they conceded and at the beginning of their presentation that set-aside remedies are available. That does mean vacater is an ordinary matter but it appeared towards the end of the presentation they were no longer conceding it. You know, our basic point here is that the E3 doesn't specify any remedies and so the ordinary presumption which is that all the remedies available to federal courts would apply here. In arguing otherwise, they're putting an inordinate amount of weight on this word determination but determination does not, as an ordinary matter, mean declaratory judgment. We know it doesn't in 1252 because Congress used those two words differently and if they're reading determination to mean declaratory judgment and set-aside remedy but not injunction, they've offered no evidence for why the word should be read that way. There's no textual argument about that, there's no cases that say that and so what I think they're trying to escape is that their reading of 1252 E1A as requiring remedies to be specified means that there would be no remedy available  action. Obviously, that can't be what Congress intended and that just goes to show their reading of E1A is wrong for all the reasons we've said in our briefing. One last, just a factual question. Under the district court's order, have the individual plaintiffs had new hearings? Your Honor, all but one. One of our plaintiffs is still out of the country. But the others all had new hearings under pre-guidance law? That's correct. And what happened in those? So they either, let me back up a moment, some of them actually got new hearings before the district court's injunction, which is reflected in the record here. The others got afterwards. They were all, either they passed credible fear or the government just put them into regular removal proceedings and those are at various stages at this point. Thank you. Any further questions? Thank you. Any time left? All right, why don't you take two minutes. Thank you, Your Honor. Just very quickly. First, just, I wanted to clarify in response to your question earlier, Judge Griffith. I would refer you to the Hoar and Galena cases cited in our briefs from the Seventh Circuit, which are on point directly with your hypothetical applying the condoned helpless standard and actually finding the government unable and it didn't tell us what the guidance says, right? No, but it tells you that this is a term that's been used interchangeably in the hypothetical. But it didn't have the sentence that I quoted to you. That wasn't before the Seventh Circuit, the sentence that says unwilling or unable comma such as. It did not have that sentence, but I don't know that that matters. The second point quickly, just on the remedy and the judicial review. Again, I repeat the distinction we've drawn between substantive law and everything else that 125025B1 does. The result of finding jurisdiction here is that section 1158 means three different things in three different contexts. It doesn't apply to immigration judges reviewing credible fair determinations on the choice of law issue and on the substantive law on that point. So you have three different interpretations of section 1158. We know from Fisk Court's precedence and Supreme Court's precedence that there are different contexts. Last, just to this independently exclusively solely issue, the point simply here is asylum officers cannot define groups circularly and that's in part what the guidance does now. So if an alien is in normal removal proceedings they can articulate a circular social group and in credible fair where we agree on this point with plaintiffs that the alien doesn't have a burden to articulate delineate if you will the issue in front of the asylum officer don't use circular social groups. So I think we agree on that and there's really no issue on that anymore. So for those reasons and the others I've raised we urge the court to reverse the injunction. Thank you. Alright, call the next case. Thank you.
judges: Henderson, Tatel, Griffith